UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TYHEIM TOWNS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 1:13 CV 88 DDN |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Tyheim Towns for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 7.) For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

## I. BACKGROUND

Plaintiff Tyheim Towns, born May 4, 1995, applied for Title XVI benefits on March 29, 2010. (Tr. 119-25.) He alleged an onset date of disability of January 1, 1999, due to a learning disability and difficulty focusing. (Tr. 142.) Plaintiff's application was denied initially on July 7, 2010, and he requested a hearing before an ALJ. (Tr. 66-81.)

On March 27, 2012, following a hearing, the ALJ found plaintiff not disabled. (Tr. 12-27.) On April 22, 2013, the Appeals Council denied plaintiff's request for review. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL HISTORY

On March 16, 2009, plaintiff saw Naveed J. Mirza, M.D., his primary physician, at the Kneibert Clinic. He complained of difficulty concentrating, frequent forgetfulness, and the need to hear instructions multiple times. Dr. Mirza assessed attention deficit disorder and insomnia and prescribed Vyvanse and Remeron.[1] He told plaintiff to return in one month for further evaluation. (Tr. 232-34.)

On April 15, 2009, plaintiff returned to Dr. Mirza's office for a follow-up appointment. Plaintiff mentioned that he has not been sleeping well and that he continued to have attention and concentration problems. Dr. Mirza increased the dosage for the Remeron prescription and told plaintiff to return in a month. (Tr. 229-31.)

On May 13, 2009, plaintiff reported stability and improvement since his last visit. His mother reported that plaintiff tried hard in school, required occasional redirection, and had no mood problems. (Tr. 226-28.)

On June 18, 2009, plaintiff returned to Dr. Mirza's office and reported social limitations, forgetfulness, and motivational issues. His mother reported that plaintiff did not respond to her appropriately without continual repetition. Dr. Mirza again asked plaintiff to return in a month and to continue his regimen of medications. (Tr. 223-25.)

On July 8, 2009, plaintiff reported poor coping skills but denied recent depression. He had also lost weight, but his mother reported a fair appetite. Dr. Mirza recommended that plaintiff continue his current regimen of medications and asked that he return in a month. (Tr. 220-22.)

On August 7, 2009, plaintiff complained of lacking motivation and limited coping skills. He reported social interactions with friends. His mother reported that he recently forgot to tie his shoe, which surprised her. Dr. Mirza recommended that he continue taking present medications and return in one month. (Tr. 217-19.)

On August 28, 2009, plaintiff had an Individual Education Plan (IEP) evaluation for his ninth grade year at Poplar Bluff High School. Plaintiff had received special education services

---

[1] Vyvanse is used to treat attention deficit hyperactivity disorder. WebMD, http://www.webmd.com/drugs (last visited on March 3, 2014). Remeron is an antidepressant. Id.

since at least kindergarten due to a diagnosis of language impairment. The report stated that plaintiff met all government eligibility criteria for the educational diagnosis of a language impairment and noted difficulty with syntax, semantics, and morphology. The effects of his language deficits included below grade level aptitude in all core areas, limited understanding and use of vocabulary words, difficulty expressing himself in writing or orally, and difficulty completing multistep word problems. The Wechsler Intelligence Scale for Children indicated borderline range of intelligence and resulted in a verbal comprehension score of 65, a perceptual reasoning score of 98, a working memory score of 116, a processing speed score of 59, and a full scale IQ score of 79. Regarding adaptive behavior, plaintiff functioned in the average range and could transition from classes and activities without difficulty. He could also care for and communicate his daily living needs. His teachers observed appropriate behavior with his peers and teachers. They described him as "too playful at times" and noted that he is easily distracted but also easily redirected. (Tr. 176-89, 195-97.)

On September 23, 2009, plaintiff returned to Dr. Mirza's office and reported satisfactory behavior but difficulty concentrating and excessive talking in class. His mother again reported the need to repeat herself. Dr. Mirza noted that the insomnia condition had improved. Dr. Mirza recommended that plaintiff continue his current medications and return in one month. (Tr. 214-16.)

On October 23, 2009, plaintiff met with Dr. Mirza and reported cognitive limitations and difficulty processing information. He also reported attentiveness and no behavioral problems other than excessively talking in class. His mother again reported the need to repeat herself. Dr. Mirza recommended that plaintiff continue his current medication and return in one month. (Tr. 211-13.)

On December 2, 2009, plaintiff again met with Dr. Mirza and reported satisfactory concentration and attention span and the ability to follow directions. He reported no behavioral problems except for an issue with a classmate due to his limited coping skills. His mother again reported the need to repeat herself. Dr. Mirza recommended that plaintiff continue his current regimen of medications and return in two months. (Tr. 208-10.)

On January 28, 2010, plaintiff met with Dr. Mirza and reported occasional difficulty concentrating and with motivation. He further reported no behavioral issues and satisfactory sleep and appetite. His mother reported difficulty with performing chores and the need to repeat herself. Dr. Mirza recommended that he continue his medications for ADD and insomnia and return in one month. (Tr. 205-07.)

On February 25, 2010, plaintiff's mother reported that plaintiff talked back and did not listen to her. She further reported that most of his behavioral issues occurred in the home. He continued to have limited coping skills and academic difficulties. (Tr. 202-04.)

On March 24, 2010, plaintiff again met with Dr. Mirza and reported difficulty following directions and occasional distractions. He further reported the increased difficulty of school work and low grades. Dr. Mirza recommended that he continue the medications for ADD and insomnia and return in two months. (Tr. 199-201.)

On May 19, 2010, plaintiff again met with Dr. Mirza and reported satisfactory behavior. He reported the inability to follow directions and the need for repetition of directions. He further reported defiance, frustration, sadness, and withdrawal but also fair appetite and sleep. Dr. Mirza considered recurrent major depressive disorder, prescribed Wellbutrin, and continued plaintiff on his other medications. (Tr. 289-91).

On June 2, 2010, Joan Singer, Ph.D., completed a Childhood Disability Evaluation Form. Based on plaintiff's medical records, she found plaintiff's conditions of ADD, insomnia, and language impairment to be severe but that they did not meet or medically or functionally equal the listing requirements. She further found that plaintiff had marked limitations with acquiring and using information and less than marked limitations with completing tasks and interacting with others. (Tr. 235-40.)

On July 14, 2010, plaintiff again met with Dr. Mirza and reported difficulty expressing his feelings, punching a hole in a wall, increased anger, and temper tantrums. Dr. Mirza prescribed Invega and told plaintiff to return in one month.[2] (Tr. 286-88.)

---

[2] Invega is used to treat certain mental/mood disorders. WebMD, http://www.webmd.com/drugs (last visited on March 3, 2014).

On August 11, 2010, plaintiff met with Dr. Mirza. His mother reported continued behavioral issues, including disobedience, defiance, withdrawal, and argumentativeness. Dr. Mirza observed depressed and irritable mood, distracted thought, low self-esteem, poor insight, and fair judgment. He recommended that plaintiff remain on the current regimen of medications and return in one month for a follow-up. (Tr. 283-85.)

On September 8, 2010, plaintiff again met with Dr. Mirza. Plaintiff reported behavioral issues at home, including lack of motivation with chores, but no such issues at school. He also reported daydreaming but that he did not lose interest easily during activities. Dr. Mirza recommended that he remain on the current regimen of medications and return for a follow-up in two months. (Tr. 279-81.)

On November 3, 2010, plaintiff again met with Dr. Mirza at his office. Plaintiff reported increased aggression, more mood swings, and increased difficulty with emotional control. He further reported no behavioral issues at school but complained that he found his schoolwork to be increasingly difficult and time consuming. Dr. Mirza increased the dosage of plaintiff's Invega prescription and recommended that he continue his other medications and return for a follow-up in two months. (Tr. 276-78.)

On December 17, 2010, plaintiff again met with Dr. Mirza at his office. Plaintiff's mother stated that he was doing fairly well but that getting plaintiff's attention required her to repeat herself. Plaintiff reported difficulty with focus at school as well. He also reported occasional frustration and anger. Dr. Mirza recommended that plaintiff continue his medications and return in two months. (Tr. 273-75.)

On February 11, 2011, plaintiff again met with Dr. Mirza at his office. Plaintiff reported increased activity, lack of motivation, and boredom. He further reported that his failure to listen caused him trouble and that he had difficulty expressing himself. Dr. Mirza diagnosed plaintiff with psychotic disorder and recommended that plaintiff continue his medications and return in two months. (Tr. 270-72.)

On March 31, 2011, plaintiff received an IEP evaluation. The evaluation indicated language impairment and the need for repeated or rephrased instructions but no functional concerns in the areas of socialization, communication, daily living or motor skills. His strengths

included good attendance, getting along with his peers, treating his teachers politely, the ability to be redirected with ease, timely completion of assignments, and appropriate participation in class discussion. The report recommended that plaintiff continue in the special needs program and stated that he required oral instructions and prompts and extended time for examinations. Plaintiff indicated that he would pursue post-secondary education after high school graduation. (Tr. 293-312.)

On April 8, 2011, plaintiff again met with Dr. Mirza at his office. He reported difficulty following directions but no significant behavioral problems. Dr. Mirza described plaintiff as less expressive and distracted. Plaintiff reported fair grades but receiving increased assistance with reading and math schoolwork. Dr. Mirza recommended that plaintiff continue on his medications and return in two months. (Tr. 267-69.)

On April 16, 2011, an electrocardiogram revealed sinus bradycardia within normal limits. (Tr. 262-63.)

On May 9, 2011, Dr. Mirza filled out a Child Disability Evaluation Form. He indicated that plaintiff had marked limitations with acquiring and using information, attending and completing tasks, self-care, and health. He noted plaintiff's poor handling of social situations, inability to sustain attention and concentration with tasks requiring mental effort, and ongoing psychiatric issues. (Tr. 259-60.)

On June 3, 2011, plaintiff again met with Dr. Mirza. Plaintiff had been promoted to the eleventh grade. He reported that he continued to be withdrawn and struggle with directions but was generally able to focus. Dr. Mirza recommended that plaintiff continue his medications and return in two months. (Tr. 333-35.)

On July 29, 2011, plaintiff again met with Dr. Mirza. Plaintiff reported no significant behavior issues or depression and that he had been sleeping well and had a fair energy level. He further reported that he continued to struggle with motivation, and Dr. Mirza found him easily distracted. Dr. Mirza recommended that plaintiff continue his medications and return in two months. (Tr. 330-32.)

On September 23, 2011, plaintiff reported satisfactory behavior but difficulty performing his chores and maintaining focus. Dr. Mirza recommended that plaintiff continue his medications and return in two months. (Tr. 327-29.)

On November 18, 2011, plaintiff again met with Dr. Mirza. Plaintiff reported difficulty expressing himself, the need for redirection, frustration, and poor motivation, but that he had passing grades. Dr. Mirza recommended that plaintiff continue his medications and return in two months. (Tr. 317-19.)

On January 13, 2012, plaintiff, now at age 16, again met with Dr. Mirza. Plaintiff reported emotional outbursts and occasionally struggling with listening to authority figures, but that he had the ability to concentrate. Dr. Mirza recommended that plaintiff continue his medications and return in two months. (Tr. 314-16.)

**Testimony at the Hearing**

A hearing was conducted before an ALJ on March 13, 2012. (Tr. 31-44.) Plaintiff testified to the following. He is sixteen years old and measures six feet, one inch, and 150 pounds. He is in eleventh grade, and his special education classes include math, social studies, biology, and English. His grades consist of Cs and Ds, and he plays on the high school basketball team. Occasionally, low grades prevented him from basketball participation. He takes medications but cannot list them. His medication does not work, and he occasionally forgets to take them. In order to avoid trouble, he rarely talks to other students. During the then current school year, he received a morning detention for talking back to his English teacher. His school does not assign him much homework, and he does not always complete his assignments. (Tr. 36-38)

Carolyn Towns, plaintiff's mother, was also present at the hearing and testified as follows. Plaintiff has lived with her his entire life, and they live alone. She consistently has to tell plaintiff to empty the trash, shower, and mow multiple times. About four times per day, he becomes angry due to her repetition, and he has punched a hole in the kitchen wall twice. (Tr. 39-40.)

His teachers plan to keep him in the special education program. They did not mention any behavioral issues but discussed his schoolwork, including his difficulty reading. He gets along

well with both his teacher and his basketball coach. He has his driver's permit but required assistance with studying from an independent living center and took the exam with oral instructions and prompts. After school, he comes home and often watches television or plays with his nephew or other relatives. He plays basketball outside the house. Sometimes he goes out with friends but only with her permission. Occasionally, he spends the night with other family members. He gets along with his peers, although they occasionally anger him. Plaintiff's doctor informed her of his plan to continue plaintiff's medication and told plaintiff to obey her. Plaintiff requires her direction to attend to his personal needs. (Tr. 41-43.)

### III. DECISION OF THE ALJ

On March 27, 2012, the ALJ issued a decision that plaintiff was not disabled. (Tr. 12-30.) At Step One of the prescribed regulatory decision-making scheme, the ALJ found that plaintiff has not engaged in substantial gainful activity since the application date, March 29, 2010. At Step Two the ALJ found that the plaintiff's severe impairments were borderline intellectual functioning, language impairment, attention deficit disorder, insomnia, major depressive disorder, and psychotic disorder. (Tr. 18.)

At Step Three, the ALJ found that plaintiff had no impairment or combination of impairments that met or was the medical equivalent in severity to the listings, nor did the plaintiff have an impairment or combination of impairments that was the functional equivalent of the severity of the listings. (Tr. 27.)

### IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the

decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

The Act provides in relevant part:

An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i) (1996).

To be entitled to disability benefits, a child claimant must engage in a three-step process. 20 C.F.R. § 416.924(a). At Step One, a child claimant must show that he never engaged in substantial gainful activity. Id. § 416.924(b). At Step Two, a child claimant must show that his physical or mental impairment or combination of impairments is severe. Id. § 416.924(c). At Step Three, a child claimant must show that his impairments, singly or in combination, met or were medically or functionally equivalent to a listed impairment. Id. § 416.924(d).

## V. DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to find that plaintiff satisfied the requirements of Listing 112.05D, (2) finding that plaintiff's impairments did not functionally equal a listing, and (3) failing to give proper weight to the opinion of his treating physician, Dr. Mirza.

### A. Listing 112.05

Plaintiff argues that the ALJ erred by failing to find that he met the requirements of Listing 112.05, which pertains to Mental Retardation. 20 C.F.R. § 404, App. 1. Specifically, the listing defines a mental impairment consisting of "significantly sub average general intellectual functioning with deficits in adaptive functioning." Id. The listing sets forth alternative sets of criteria captioned A, B, C, D, E, or F, which a claimant must satisfy to qualify. Id. Plaintiff specifically challenges the ALJ's determination regarding the D criteria. To satisfy D, plaintiff

must show: (1) a significantly sub-average general intellectual functioning with deficits in adaptive functioning; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant limitation of function. Id.  Plaintiff asserts that his valid verbal IQ of 65 and his diagnoses for language impairment, ADD, insomnia, major depressive disorder and psychotic disorder satisfy the requirements of Listing 112.05D.

However, plaintiff fails to demonstrate that the ALJ erred in establishing plaintiff had deficits in adaptive functioning necessary to meet Listing 112.05D

> The term "adaptive functioning" refers to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age. Indicators of adaptive behavior include childhood developmental milestones (e.g., when did the individual first crawl, walk, tie shoes, feed/dress self, etc.), as well as educational and social achievements.

Social Security Administration, Program Operation Manual System, DI 24505.015, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515056.

Plaintiff received an IEP report in May 2009 that he, at age 14, "appears to be functioning in the average range for adaptive behavior as compared to his peers.  He transitions from class to class and from activity to activity without difficulty.  He can take care of his daily living needs and can communicate his need effectively." (Tr. 186.)  Both IEPs, dated August 2009 and March 2011, noted that there were no concerns for adaptive behavior.  (Tr. 196, 295.)  Plaintiff's mother testified that plaintiff received his driving permit.  (Tr. 42.)  Therefore, substantial evidence supports finding that plaintiff did not suffer adaptive functioning deficits.

Plaintiff also argues that the ALJ erred by not discussing Listing 112.05D before determining that he did not satisfy any listing requirement and by not discussing whether plaintiff suffered deficits in adaptive functioning.  However, the ALJ does not err when he "fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record."  Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).  As set forth above, substantial evidence supports the ALJ's determination that plaintiff did not meet Listing 112.05D, and therefore, the ALJ did not err.

**B. Functional equivalency**

Plaintiff argues that the ALJ failed to consider the medical records of Dr. Mirza and, in particular, not finding that he had a marked limitation in attending and completing tasks in addition to acquiring and using information. If the ALJ determines that a child claimant's impairments do not satisfy the listings, the ALJ must consider whether the impairments are the functional equivalent. 20 C.F.R. § 416.926a(a). A child's impairment is functionally equal to a listed impairment if there is an extreme limitation in one of six specific functional domains, or a marked limitation in at least two domains. Id. Domain analysis requires consideration of the child's age-appropriate functioning in relation to acquiring and using information, attending and completing tasks, interacting and relating with others, moving around and manipulating objects, caring for oneself, and health and physical well-being. 20 C.F.R. § 416.926a(a)(1)(i)-(vi).

The attending and completing tasks inquiry focuses on the ability of the child to focus and maintain attention, the ability to begin, perform, and finish activities, the pace of performance, and the ability to switch between activities. 20 C.F.R. § 416.926a(h). Other considerations include the ability to focus in the face of distraction, the ability to avoid impulsive thinking and acting, and the ability to organize, plan, prioritize tasks, and manage time. Title XVI: Determining Childhood Disability-the Functional Equivalence Domain of "Attending & Completing Tasks," SSR 09-4P (S.S.A Feb. 18, 2009).

The ALJ determined that plaintiff had some but less than marked limitation in attending and completing tasks. In reaching this conclusion, the ALJ emphasized that teachers reported that plaintiff completed assigned tasks, participated in class discussions, achieved passing grades, and was scheduled to graduate on time. (Tr. 24.) His mother testified that he played basketball for his high school, watched television, played video games, and spent time with family and friends. (Tr. 36-38.) In addition, Dr. Singer, the state agency consultant reviewed plaintiff's file and concluded that plaintiff had a less than marked limitation in attending and completing tasks, specifically noting that while plaintiff suffers from ADD and insomnia, his symptoms are stable on medication. (Tr. 237.) Moreover, Dr. Mirza's most recent notes indicate that although he struggled with completing chores at home, he achieved passing grades and retained the ability to concentrate and focus. (Tr. 314-35.)

Considering the record as a whole, substantial evidence supports the ALJ's determination that plaintiff suffered some limitation in attending and completing tasks but that such limitation did not rise to the level of marked. In sum, although the record may have supported a contrary conclusion, the ALJ did not err in his determination.

**C. Dr. Mirza's Opinion**

Plaintiff argues that the ALJ did not properly consider the opinion of the treating physician, Dr. Mirza, when the ALJ gave Dr. Mirza's opinion no significant weight without considering whether the opinion was well supported by the record. In addition, plaintiff argues that the ALJ failed to provide any inconsistencies between Dr. Mirza's opinion and the record.

Plaintiff specifically argues that the ALJ erred in affording no significant weight to the opinion of Dr. Mirza, plaintiff's treating physician, regarding plaintiff's status of attending and completing tasks, personal care, and health and physical well-being. While a treating physician's opinion is generally entitled to substantial weight, such an opinion does not automatically control because the ALJ must evaluate the record as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999). In his decision, the ALJ reasoned that although normally treating physicians' opinions are entitled to great weight, the opinion of Dr. Mirza was simply not supported by evidence as a whole, including Dr. Mirza's own treatment notes as well as school records and claimant's statements. (Tr. 21-22.)

Although the ALJ did not discuss these inconsistencies directly, "an ALJ's failure to cite specific evidence does not indicate that it was not considered." Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000). Here, the record supports the finding that plaintiff's limitations with attending and completing tasks were less than marked. Dr. Mirza on numerous occasions described plaintiff's condition as "mild" regarding hyperactivity, anxiety, thought disruption, impulsiveness, depressed mood, and sleep problems. (Tr. 190-92, 199-234, 241-57, 261-91, 313-35.) Additionally, in June 2011, Dr. Mirza stated that plaintiff had been able to focus most of the time. (Tr. 333.) Moreover, the ALJ found no evidence that plaintiff suffered limitations with personal care. Further, plaintiff's mother indicated that he had no problems in this area. (Tr. 135.)

The ALJ also found that plaintiff had no limitations in the area of health and physical well-being due to the lack of evidence in the record. (Tr. 27.) For the evaluation of health and physical well-being, the ALJ considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies" that were not considered in the evaluation of the child's ability to move and manipulate objects. 20 C.F.R. § 416.926a(l). Dr. Mirza's records indicate no complaints or diagnoses regarding the effects of plaintiff's impairments on his physical ability. Moreover, plaintiff alleged no physical impairments, and plaintiff's mother indicated no significant limitations but that he could walk, run, dance, ride a bike, throw a ball, jump rope, play sports, and play video games. (Tr. 133.) Moreover, plaintiff participated as a member of his high school's basketball team. (Tr. 37.)

"It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). Substantial evidence supports the ALJ's decision to afford Dr. Mirza's opinion minimal weight. Accordingly, plaintiff's argument is without merit, and the ALJ did not err by giving Dr. Mirza's opinion only minimal weight.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

/S/   David D. Noce<br>
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 23, 2014.